CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
February 26, 2026
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **ADEIRA CELEENE WRIGHT,** ) | |
| ) | |
| **Plaintiff,** ) | Civil Action No.: 7:26-CV-00048 |
| ) | |
| **v.** ) | |
| ) | |
| **ROANOKE CITY DEPARTMENT OF** ) | By: Hon. Robert S. Ballou |
| **SOCIAL SERVICES, et al.,** ) | United States District Judge |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Plaintiff Adeira Celeene Wright, proceeding *pro se*, claims that Defendants unlawfully removed her biological children from her care and unlawfully enforced protective orders barring contact with several other of her biological children. Wright previously filed suit in this Court requesting that four of her minor children, who are apparently in the custody of their adoptive parents, be removed from their homes and placed with her due to allegations of abuse. *See* Complaint at 1, *Wright v. Virginia Department of Social Services, et al.*, No. 7:25-cv-00898 (W.D. Va. Dec. 8, 2025), Dkt. 3. This Court abstained from exercising jurisdiction over Wright's case. *Wright I*, Dkt. 14. In October 2025, several additional children were removed from her home, and in January 2026, the Franklin County Juvenile and Domestic Relations Court issued protective orders barring Wright from contact with the four minors currently in the adoptive parents' custody. Wright now brings a federal complaint in this court against Roanoke City Department of Social Services, Franklin County Department of Social Services[1], John/Jane Doe

---

[1] Roanoke City Department of Social Services and Franklin County Department of Social Services are branches of the Virginia Department of Social Services and are collectively referred to as "DSS."

DSS Supervisors 1-10, Rick Boyer, in his official capacity as Guardian ad Litem, and John/Jane Doe Clerks, Franklin County Juvenile and Domestic Relations Court, under 42 U.S.C. § 1983 alleging unlawful seizure and deprivation of familial association, retaliation for protected activity, and ongoing constitutional violations. Dkt. 2 at 1, 5–6. Wright filed several additional motions seeking temporary restraining orders (Dkts. 1, 15) and to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1) (Dkt. 7), supplemental authority (Dkts. 9, 10, 12) and several declarations (Dkts. 11, Sealed Declaration, 12, 13, 14). Because Wright again asks the court to intervene in a child custody dispute and relitigate ongoing state court proceedings, this Court will abstain from exercising jurisdiction in this case. Insofar as Wright alleges retaliation against these defendants separately from the merits of her child custody case, she fails to state a claim upon which relief can be granted.

I.    **Background**

Wright brings her claims under § 1983 for "Unlawful Seizure and Deprivation of Familial Association," retaliation, and, vaguely, other constitutional violations. Dkt. 2 at 5–6. In her federal complaint[2], Wright first alleges that Defendants seized her children without a warrant and "deprived her of familial association without due process of law" in violation of the Fourth Amendment and the Fourteenth Amendment due process clause. *Id*. ¶ 24–25. Next, she alleges that Defendants retaliated against her, in violation of the First Amendment, "for mandated reporting and federal litigation by continuing separation through proxy enforcement." *Id*. ¶ 26.

---

[2] Courts in the Fourth Circuit frequently consider facts alleged by *pro se* plaintiffs in response to a motion to dismiss, even if they are improperly asserted outside of the complaint. *Holley v. Combs*, 134 F.4th 142, 144 (4th Cir. 2025); *see also*, *Goines v. Valley Community Services Board*, 822 F.3d 159, 166 (4th Cir. 2016) (holding that courts may consider documents explicitly incorporated by reference or otherwise integral to the complaint). Therefore, I have liberally construed Wright's complaint to include facts contained in both motions for a temporary restraining order, associated affidavits, and supplemental authority. Dkts. 1, 3, 4, 9, 10, 12–15.

Finally, she alleges ongoing constitutional violations because "Defendants continue to enforce separation without jurisdiction." *Id*. ¶ 27. Specifically, she alleges that "subject-matter jurisdiction never validly attached" and "the Circuit Court that entered the termination of parental rights and adoption orders formally acknowledged that it no longer retained jurisdiction." Dkt. 10 at 2–4.

In explaining her claim, Wright recites facts regarding removal of several of her minor children from her custody. It appears Wright had custody of some of her biological children until October 2025. On or around October 12, 2025, Wright reported one of her daughters as a runaway. Dkt. 4 ¶ 2. She located her child and contacted law enforcement. *Id*. ¶ 3. The police picked up the child and took her to the police department. *Id*. ¶ 4. The police did not return the child to Wright. Subsequently, DSS directed that all children be removed from the home "based on [Wright's] alleged extensive history, including matters connected to a stalker." *Id*. ¶ 6. On October 14, 2025, law enforcement removed one additional child from Wright's home. *Id*. ¶¶ 9–11. Pursuant to additional emergency removal orders dated October 14, 2025, two additional children were removed from her home on October 20, 2025. *Id*. ¶¶ 12–14.

Wright alleges that the removal of her children in October 2025 occurred in violation of due process and without judicial authorization. Dkt. 2 ¶ 10. Specifically, she alleges that "[e]mergency removal orders dated October 14 were obtained for three children despite only two being in state custody" and "[t]hose same orders were later used to seize additional children days later, resulting in staggered removals based on reused affidavits." *Id*. ¶¶ 12–13. She also alleges that the removal orders were "stale." Dkt. 4 ¶ 15. Further, Wright alleges that Defendants acted unlawfully and without jurisdiction because "the state circuit court entered an order

3

acknowledging it no longer had subject-matter jurisdiction over the adoption and termination proceedings arising from these events." Dkt. 2 ¶ 15.

Despite recitation of these facts, Wright's requests for relief arise out of her custody dispute for her other four biological children. Based on a review of the record, it appears that Wright lost custody of four of her biological children well before October 2025.[3] *See* Dkt. 2, Sealed Exh. B; Sealed Exh. C. At some point after losing custody, Wright resumed contact with these children, who are in the custody of their adoptive parents. *See* Dkt. 2, Sealed Exh. C at 7. DSS declined to reopen these cases and confirmed that the investigation was "compliant with CPS policy." *Id*. According to the adoptive mother's state court affidavit, attached as an exhibit to Wright's complaint, Wright continually contacted several of the children and reported the adoptive parents to DSS for abuse. *Id*. Child Protective Services investigated the adoptive parents and ultimately closed the case, concluding that there was no evidence of abuse. *Id*. at 8; Dkt. 9-1 at 2 ("the investigation was determined to be compliant with CPS policy . . .. VDSS will not be reopening or reviewing the full history of the foster care and adoption cases involving your children"). Wright also posted on social media about the children, continually informed them that she was coming to get them, and revealed to one child that he was adopted. Dkt. 2, Sealed Exh. C at 7–8. Wright also apparently threatened her biological children's adoptive parents. *Id*. at 7.

Franklin County Juvenile and Domestic Relations Court issued preliminary child protective orders on January 13, 2026, ordering Wright to refrain from contacting any of these four children. Dkt. 2, Sealed Exh. B. Wright filed a Motion to Dissolve for Lack of Subject

---

[3] It appears that Wright lost custody several years ago, as her nine-year-old biological child was apparently adopted at birth by his current adoptive parents. *See* Dkt. 2, Sealed Exh. C at 9.

4

Matter Jurisdiction in Franklin County Juvenile and Domestic Relations Court on January 22, 2026. Dkt. 13 at 3. A hearing on this motion is scheduled for March 10, 2026. Dkt. 15-1 at 4–5. Wright argues that, because the Roanoke City Circuit Court disclaimed jurisdiction of the child custody dispute, these protective orders were issued absent lawful jurisdiction and are therefore unconstitutional. *See* Dkt. 2, Sealed Exh. A. Wright also argues that the protective orders were retaliatory because they "followed [her] protected reporting activity, DSS's withdrawal, and the jurisdictional collapse." Dkt. 11, Sealed Declaration at 4.

On January 23, 2026, Wright filed a state habeas petition alleging unconstitutional restraint imposed by the protective orders. Dkt. 12-2. The Franklin County Juvenile and Domestic Relations Court Clerk's Office informed her that the petition should not have been placed on the docket, and her filing fee would be refunded. Dkt. 12 ¶ 6. In an additional declaration, Wright again alleges that DSS and the Franklin County Juvenile and Domestic Relations Court acted without authority and deprived her of state remedies. Dkt. 13 at 4. Specifically, she alleges that there are no written orders appointing a Guardian ad Litem, authorizing DSS participation, extending restraint, or ruling on her motion to dissolve for lack of subject matter jurisdiction. *Id*. at 2. Wright has requested the Franklin County Juvenile and Domestic Relations Court Clerk's Office provide her ADA Title II accommodations to access the Juvenile and Domestic Relations Docket. *Id*. at 4.

On February 10, 2026, Wright filed a notice of urgent Rule 65 motion and a motion for a second temporary restraining order in this Court. Dkts. 14, 15. These filings reiterate allegations that the preliminary protective orders were issued without an adversarial hearing, written findings, or adjudication of subject matter jurisdiction. Dkt. 14 ¶ 3; Dkt. 15 ¶¶ 6–8. Specifically, Wright argues that ex parte appointment of a Guardian ad Litem deprives her sufficient due

5

process. Dkt. 15 ¶¶ 9–10. Wright further restates that compliance with the preliminary protective orders is impossible because she may encounter her biological children at daily school drop off and pickup, and that she lacks adequate state remedies. Dkt. 14 ¶¶ 5–7; Dkt. 15 ¶¶ 27–33. Wright also reiterates her retaliation claim, arguing that "[t]he temporal proximity between Plaintiff's jurisdictional challenge, the immediate expansion of restraints, and subsequent unauthorized state-actor contact establishes retaliatory escalation, not lawful continuation of emergency authority." Dkt. 15 ¶ 23.

Wright also brings a new claim in the second motion for a temporary restraining order. She alleges that the state court violated Title II and denied her access to the courts by failing to provide adequate ADA accommodation. *Id*. ¶¶ 18–20.[4]

Also included in her second motion for temporary restraining order, Wright attached correspondence with the Franklin County Juvenile and Domestic Relations Court Clerk's Office. Dkt. 15-1. Although Wright alleges that she has not received written notification of the preliminary protective orders, the Clerk's Office asserted that the orders were served on Wright in person on January 22, 2026. *Id*. at 5. The Clerk's Office provided the written order appointing a Guardian ad Litem, and asserted that standard procedure includes DSS involvement in child protective orders. *Id*. at 5–6, 8. The Clerk's Office also provided copies of the state court case docket, including the statutory basis for preliminary child protective orders. *Id*. at 10.

---

[4] Because Wright does not include allegations that the Franklin County Juvenile and Domestic Relations Court violated the Title II of the Americans with Disabilities Act in her Complaint, nor request relief related to that alleged violation, any claimed violation of Title II is not addressed by this opinion. Insofar as the Complaint is construed liberally, she fails to state a claim for relief because she does not identify any specific statutory violations or any Defendants personally involved in the alleged deprivation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a complaint fails to state a claim if it recites only "labels and conclusion" or a "formulaic recitation of a cause of action").

6

To remedy these alleged constitutional violations, Wright requests that this court declare Defendants' actions unconstitutional, enjoin Defendants from reliance on and enforcement of the third-party protective orders that direct separation of Plaintiff from her children, and grant temporary, preliminary, and permanent injunctive relief. Dkt. 2 at 6. Wright's first motion for a temporary restraining order requests similar relief. Wright's second motion for a temporary restraining order reiterates theses requests for relief, but also asks that this Court "prohibit[] arrest, criminal referral, or enforcement actions absent a docketed adjudication of subject-matter jurisdiction." Dkt. 15 at 10. Wright does not assert a claim for monetary damages, but, in the first motion for a temporary restraining order, "expressly reserves all claims for compensatory damages, punitive damages, attorneys' fees, and costs pursuant to 42 U.S.C. §§ 1983 and 1988, to be pursued upon resolution of the request for injunctive relief." Dkt. 1 at 5. However, Wright's complaint does not request monetary damages, so her case is addressed only as seeking declaratory and injunctive relief.

## II.   Discussion

As a *pro se* litigant, Wright's pleadings are afforded liberal construction and held to a less stringent standard than formal pleadings drafted by counsel. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Liberal construction is particularly important when *pro se* complaints allege civil rights violations. *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). However, even a *pro se* filing "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. 2021) (internal citations omitted).

Although the Court will construe *pro se* pleadings liberally, it remains imperative that a federal court establish subject matter jurisdiction at the outset of litigation. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)). The Fourth Circuit recently expounded on this proposition, stating that "it is incumbent on a court to evaluate its jurisdiction at the outset, lest it inadvertently breach the 'bounds of authorized judicial action.'" *Hensley v. City of Charlotte*, 2023 WL 1990298, at *2 (4th Cir. Feb. 14, 2023) (quoting *Steel Co.*, 546 U.S. at 94). Further, the Federal Rules of Civil Procedure mandate that the court dismiss an action if it "determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. Proc. 12(h)(3).

Even applying liberal construction, Wright's pleadings must be dismissed. First, the Court must abstain from hearing Wrights claims under the Fourth Amendment[5], the due process clause of the Fourteenth Amendment, and for "ongoing constitutional violations." This Court is not the proper forum to appeal preliminary child protective orders. This Court lacks authority to oversee state agencies, such as DSS, or to direct the outcome of a state child custody case. To overturn decisions made by a state court, Wright must seek relief through the state system. State courts, specifically juvenile and domestic relations courts, have jurisdiction over child custody disputes and the authority and necessary expertise to handle these matters. Second, insofar as Wright brings a cognizable claim for retaliation, it must be dismissed for failure to state a claim.

---

[5] Wright appears to assert Fourth Amendment protections against unlawful seizure on behalf of her minor children removed from her home in October 2025. Wright is not an attorney and brought this action *pro se.* She may not, as a non-attorney parent, represent her minor children in federal court. *Myers v. Loudoun Cnty. Pub. Schools*, 418 F.3d 395, 401 (4th Cir. 2005). In some instances, a parent or guardian may bring an action on behalf of a minor child as "next friend."

A. <u>Abstention</u>

Wright seeks to vindicate her rights to familial association, protection from unlawful search and seizure, and due process by requesting that this court intervene in her child custody dispute and enjoin enforcement of preliminary child protective orders. This court is not the proper forum to adjudicate these claims. Precedent, judicial economy, and respect for comity and state court expertise dictates that federal courts shall not intervene in purely domestic matters, such as child custody, divorce, and alimony decrees. Further, federal district courts do not exercise jurisdiction over state court proceedings. Because Wright's due process and Fourth Amendment claims seek to appeal state court decisions as to protective orders and custody, this Court must abstain from exercising jurisdiction over those claims.

1. *Domestic Relations Exception*

As discussed above, federal courts are courts of limited jurisdiction, and "have an independent obligation to determine whether subject matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). Although not a constitutional rule, long-followed precedent establishes that federal courts lack jurisdiction to interfere in state court litigation involving divorce, alimony, or child custody. *Ankenbrandt v. Richards*, 504 U.S. 689, 702 (1992). In child custody cases, the Supreme Court held that "[a]s to the right to the control and possession of this child, as it is contested by its father and its grandfather, it is one in regard to which neither the congress of the United States nor any authority of the United States, has any special jurisdiction." *In re Burrus*, 136 U.S. 586, 594 (1890). Under this "domestic relations exception," federal courts lack jurisdiction when the underlying cause of action is

---

Wright does not allege that she retains parental rights that may enable her to bring a claim as "next friend," nor that her claims seek to do so. Therefore, any claims brought on behalf of her children, including the Fourth Amendment claim, must be dismissed.

9

brought under diversity jurisdiction. *Wasserman v. Wasserman*, 671 F.2d 832, 834 (4th Cir. 1982).

The Fourth Circuit has not expressly held the domestic relations jurisdictional bar inapplicable in federal question cases, but it has stated as much in dicta. *United States v. Johnson*, 114 F.3d 476, 481 (4th Cir. 1997); *see also*, *Reale v. Wake County Human Services*, 480 F. App'x. 195, 197 (4th Cir. 2012). The Fourth Circuit has cautioned courts, however, to "be alert to preclude what are genuinely divorce, alimony, or child custody cases and support cases from creeping around the barrier." *Cole v. Cole*, 633 F.2d 1083, 1088 (4th Cir. 1980). Thus, courts in the Fourth Circuit have abstained from hearing federal question cases that necessarily implicate duties arising under family relations law. *Doe v. Mast*, 741 F. Supp. 3d 409, 438 (W.D. Va. 2024); *see also Vyas v. Sofinski*, No. 7:23-CV-00075, 2023 WL 3562976, at *3 (W.D. Va. May 19, 2023), *aff'd*, No. 23-6561, 2023 WL 6058479 (4th Cir. Sept. 18, 2023). In *Doe v. Doe*, the Fourth Circuit found that the district court erred in exercising jurisdiction over a federal habeas claim filed to litigate custody of the plaintiff's minor son, even though the claim raised a federal question. 660 F.2d 101, 105–06 (4th Cir. 1981) ("in this, a purely custodial case between private parties . . . the federal courts do not intervene"). Where the substance of the claim litigates in essence divorce, alimony, or child custody, abstention is appropriate. *Id*. at 106.

Although Wright brings claims for violation of the Fourth Amendment and Fourteenth Amendment due process clause under 42 U.S.C. § 1983, these claims and requests for relief seek to relitigate state court proceedings. Wright asks that this court "[e]njoin Defendants from relying upon or enforcing third-party protective orders to continue separation absent jurisdiction." Dkt. 2

at 6.[6] Courts in the Fourth Circuit have held that when the substance of litigation is to relitigate child custody proceedings, the district court should decline jurisdiction, even if the claim is raised under federal question jurisdiction. *Cf. Kelser v. Anne Arundel Cnty. Dep't of Soc. Servs.*, 679 F.2d 1092, 1095 (4th Cir. 1982) (holding that dismissal of § 1983 claims was not proper because "a decision now by the district court . . . would not require adjusting family status, establishing familial duties, or determining the breach of such duties"); *see also*, *Johnson v. Byrd*, No. 1:16CV1052, 2016 WL 6839410, at *13 (M.D.N.C. Nov. 21, 2016), *aff'd per curiam*, 693 F. App'x. 219 (4th Cir. 2017) (holding that the domestic relations exception bars jurisdiction over claims seeking modification of child custody decrees); *Vyas*, 2023 WL 3562976, at *3–4 (holding that domestic relations abstention and the *Rooker – Feldman* doctrine bar litigation of child custody claims brought under § 1983).

The relief requested belies the true "core" of these claims: to relitigate state court orders issued by the Franklin County Juvenile and Domestic Relations Court. Despite narrow construction of the domestic relations exception, courts will decline to exercise jurisdiction when the duty at issue arises solely from family relations law. *Cole*, 633 F.2d at 1088. These claims, although couched in federal law, are based entirely on Wright's desire to appeal a state court decision as to child custody. Heeding the command that district courts "preclude what are

---

[6] Wright's claim that the Franklin County Juvenile and Domestic Relations Court acted without jurisdiction is factually frivolous. Although the Roanoke City Circuit Court held that it did not have jurisdiction over the child custody proceedings, the challenged protective orders were issued by the Franklin County Juvenile and Domestic Relations Court. *See* Dkt. 1, Sealed Exhs. A–B. Wright has not provided evidence that the Franklin County Juvenile and Domestic Relations Court lacked jurisdiction to enter the protective orders. Further, abdication of jurisdiction to promote the principal of finality does not render previously-entered orders void, but merely prevents further litigation after a final decision. *See* Va. Sup. Ct. R. 1:1; *Nelson v. Middlesex Dept. of Soc. Services*, 820 S.E.2d 400, 406–07 (Va. App. 2018). Insofar as Wright argues that orders terminating her parental rights or ordering custody arrangements are void for lack of jurisdiction, the argument is unavailing.

genuinely . . . child custody cases," this Court abstains from exercising jurisdiction over Wright's Fourth and Fourteenth Amendment claims.

### 2. Rooker – Feldman Abstention

The *Rooker – Feldman* doctrine also counsels that this Court abstain from litigating Wright's Fourth and Fourteenth Amendment claims. Wright claims denial of her due process rights by DSS, DSS officials, Rick Boyer, Guardian ad Litem, and Franklin County Juvenile and Domestic Relations Court clerks. She requests declaratory and injunctive relief that would render the state court judgment ineffectual. Therefore, the Court must abstain.

The *Rooker – Feldman* doctrine of abstention deprives a district court of subject matter jurisdiction when the party who did not prevail in state court complains of injuries caused by a state court judgment and seeks rejection of the judgment. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). *Rooker – Feldman* abstention applies when "(1) the party raising the claim lost in state court; (2) the party's injuries were caused by the state court judgment; (3) the party's claims invite the district court to review and reject the state court judgment; and, (4) the state court judgment was rendered before . . . federal proceedings commenced." *Marshall v. Marshall*, 523 F. Supp. 3d 802, 831 (E.D. Va. 2021) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The jurisdictional bar may apply even if a plaintiff frames her claim under § 1983. *See Jordahl v. Democratic Party of Virginia*, 122 F.3d 192, 203 (4th Cir. 1997); *Davis v. Singer*, No. 4:13CV7, 2014 WL 12598862, at *2 (E.D. Va. Aug. 5, 2014) ("a plaintiff may not 'seek reversal of a state court judgment simply by recasting his complaint in the form of a civil rights action pursuant to 42 U.S.C. § 1983.'" (internal citations omitted)). To preserve the Supreme Court's exclusive jurisdiction to rule on the validity of state court judgments, the *Rooker –*

*Feldman* doctrine prevents a losing party "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Skillings v. Knott*, 251 F. Supp. 3d 998, 1003 (E.D. Va. 2017) (quoting *Exxon Mobil Corp.*, 544 U.S. at 287).

    *Rooker – Feldman* abstention extends to ancillary issues that are "inextricably intertwined" with the state court issue. An issue is "inextricably intertwined" if the relief sought requires a federal court to "determine that the state court judgment was erroneously entered or must take action that would render the judgment ineffectual." *Jordahl*, 122 F.3d at 202 (quoting *Ernst v. Child and Youth Servs.*, 108 F.3d 486, 491 (3d Cir. 1997)). When the plaintiff seeks to overturn the result of a state court proceeding, the nature of that complaint is an appeal from the state court judgment. *Leonard v. Suthard*, 927 F.2d 168, 170 (4th Cir. 1991); *see Stratton v. Mecklenburg Cnty. Dept. of Soc. Services*, 521 F. App'x. 278, 291 (4th Cir. 2013) (holding that the *Rooker – Feldman* doctrine barred adjudication of Plaintiff's claims because "it is clear that any due process claim is a mere pretext for the real focus of the Complaint, which challenges the validity of records and proceedings of the North Carolina Courts that resulted in termination of the Strattons' parental rights").

    Courts in the Fourth Circuit have held that the *Rooker – Feldman* doctrine prevents federal courts from assessing the merits of a protective order. *Bey ex rel. Graves-Bey v. Jacobs*, No. 3:14-CV-511, 2014 WL 3871348, at *3 (E.D. Va. Aug. 6, 2014); *cf. Marshall*, 523 F. Supp. 3d at 834 (holding that while a federal court should abstain from appeals of preliminary child protective orders under *Rooker – Feldman*, the abstention doctrine does not apply to non-final eviction orders issued by state magistrate judges).

Wright's only specific prayer for relief directly requests that this court overturn or otherwise enjoin the protective orders issued by the Franklin County Juvenile and Domestic Relations Court. She asks that this court "declare Defendants' conduct unconstitutional" and "enjoin Defendants from relying upon or enforcing third-party protective orders." Dkt. 2 at 6.

This request for relief falls squarely within the *Rooker – Feldman* doctrine. First, Wright lost in state court given that the court entered protective orders against her. Second, she claims injuries caused by the state court protective orders, as Wright alleges that she "suffers ongoing irreparable harm including deprivation of familial association and chilling of constitutional rights." Dkt. 2 ¶ 28. Third, Wright directly requests that this Court reject the state court judgment, as she asks that the protective order and officials' conduct be declared unconstitutional, and that this Court halt enforcement of the protective order. *Id*. at 6. The request to halt the Franklin County Juvenile and Domestic Relations Court proceedings by enjoining DSS, Rick Boyer (Guardian ad Litem), and the court clerks necessarily asks that this Court declare that the state court protective orders were wrongly issued. *See Johnson*, 2016 WL 6839410 at *7 (holding that plaintiff's request that the Court enjoin a state court's allegedly unconstitutional proceedings in child custody cases was "inextricably intertwined" with the state court proceedings and therefore barred under *Rooker – Feldman*). Finally, the state court judgment was issued on January 13, 2026, one week before this lawsuit commenced. In *Marshall*, the Eastern District of Virginia held that preliminary child protective orders issued under Va. Code § 16.1-253 (the applicable statute in this case) are final orders under *Rooker – Feldman*. 523 F. Supp. 3d at 833–34. As this case falls squarely within the *Rooker – Feldman* doctrine, the Court abstains from exercising jurisdiction.

Even construing Wright's due process claims broadly to include factual assertions about unconstitutional seizure of her other children in October 2025, the *Rooker – Feldman* doctrine counsels that abstention is appropriate. Wright claims that removal of the minor children in her custody before October 2025 was unconstitutional, as the children "were seized during the early morning hours without a warrant, without exigent circumstances, and without contemporaneous judicial authorization" and "[r]emoval paperwork was completed hours after the seizure, service fields were left blank, and no 72-hour hearing was held." Dkt. 2 ¶¶ 10–11. She also alleges that her runaway child was removed without a removal order. *Id*. ¶ 14. These claims are inextricably intertwined with her state court proceedings. *See Jordahl*, 122 F.3d at 202. The Roanoke City Circuit Court issued an Order declining to reopen Wright's child custody proceedings.[7] Dkt. 2, Sealed Exh. 3. By requesting that this court "[d]eclare Defendants' actions unconstitutional," Wright seeks to appeal this denial. Courts in this district have refused to hear custody removal appeals. *See Smolinski v. Hamlett*, No. 4:22-CV-16, 2022 WL 822108, at *2 (W.D. Va. Mar. 17, 2022); *Bell v. McGowan*, No. 3:16CV00050, 2016 WL 4275847, at *2 (W.D. Va. Aug. 10, 2016). Therefore, even construing Wright's complaint broadly to include a claim for denial of due process in the removal of her minor children, this Court must abstain from exercising jurisdiction under the *Rooker – Feldman* doctrine.

B. <u>Failure to State a Claim</u>

Construing Wright's pleadings liberally, she alleges a claim for retaliation separate from the merits of her state court case. Specifically, Wright alleges "Defendants retaliated against Plaintiff for mandated reporting and federal litigation by continuing separation through proxy

---

[7] It is not entirely clear what child custody proceedings are governed by this Order. However, the Order lists seven case numbers, which appear to correspond to custody proceedings for each of Wright's seven children. Dkt. 2, Sealed Exh. C.

15

enforcement." Dkt. 2 ¶ 26. Although the Court need not abstain from hearing this action, it must be dismissed for failure to state a claim because Wright fails to state personal involvement by a person subject to liability under § 1983.

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the court must dismiss a case filed *in forma pauperis* if "at any time [ ] the court determines that ... the action or appeal: (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." An action is frivolous "where it lacks an arguable basis either in law or in fact." *Netizke v. Williams*, 490 U.S. 319, 925 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory" and lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." *Guynup v. Cullen*, 2022 WL 3359367, at *2 (W.D. Va. Aug. 15, 2022) (quoting *Netizke*, 490 U.S. at 327–28).

To state a claim under § 1983, a plaintiff must allege both (1) "the violation of a right secured by the Constitution and laws of the United States" and (2) "that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Wright claims her children's adoptive parents sought protective orders in retaliation for her mandated abuse reports and federal civil rights litigation. Dkt. 1 at 4; *see also* Dkt. 2 ¶ 22–23 ("Plaintiff engaged in protected activity . . . Defendants' coordination and enforcement of third-party protective orders . . . constitutes retaliation that would chill a person of ordinary firmness"); Dkt. 3 at 2 ("The immediate pivot to proxy enforcement after jurisdiction terminated would chill a person of ordinary firmness from reporting abuse"); Dkt. 10 at 6–7 ("The temporal proximity between the jurisdictional collapse and the civil filings supports Plaintiff's retaliation claim").

Although she alleges that other defendants relied upon or enforced those protective orders, she fails to explain how such reliance and enforcement is retaliatory. Bare allegations are insufficient to state a claim. *See Scarborough*, 517 F. Supp. 3d at 575.

Wright argues that the protective orders are "state action by proxy" used as a "jurisdictional hook to accomplish continued separation after losing lawful authority" and therefore "constitutes state action under color of law." Dkt. 2 ¶¶ 19–21. A private party acts under color of law only when he is a "willful participant[] in joint activity with state officials." *Worthington v. Rose Palmer, Esq.*, No. 3:15CV410, 2015 WL 7571822, *5 (E.D. Va. Nov. 24, 2015) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). Importantly, "private misuse of a state statute does not describe conduct that can be attributed to the state." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 941 (1982). However, the "procedural scheme" created by the statute is a product of state action. *Id*.

Wright's retaliation claim fails to state a claim. First, the adoptive parents are not named defendants in this action, and Wright does not provide any facts to suggest that any named defendants acted "in concert" with them. Second, even assuming the adoptive parents sought protective orders in retaliation for Wright's reporting activities, they did not act under color of law. Although the "procedural scheme" of the statute is a product of state action, Wright challenges the scheme only to allege that the relevant Courts acted without jurisdiction. As discussed above, this allegation is meritless. Therefore, because Wright neither identifies any named defendant who retaliated against her, nor any person acting under color of law who took retaliatory action, her retaliation claim must be dismissed for failure to state a claim.

### III.     Conclusion

Wright seeks to vindicate important interests: due process, protection of familial association, and freedom from unlawful seizure. This Court appreciates her commitment to reuniting with her children. However, to appeal child custody and domestic relations orders issued by the Franklin County Juvenile and Domestic Relations Court and Roanoke City Circuit Court, Wright must litigate in those courts. Further, insofar as Wright states a claim for retaliation unconnected with the child custody dispute, she fails to state a claim upon which relief can be granted. This Court must abstain from exercising jurisdiction, so Wright's Fourteenth Amendment due process and Fourth Amendment claims are **DISMISSED** without prejudice. Because Wright's First Amendment retaliation claim fails to state a claim for relief, this claim is **DISMISSED** without prejudice. Wright's motion to proceed *in forma pauperis* (Dkt. 7) is **GRANTED**. Wright's motions for temporary restraining order (Dkts. 1, 15) are **DENIED** as moot.

An appropriate Order shall follow.

It is so **ORDERED**.

Entered: February 26, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge